**Opinion filed January 15, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00195-CV

_____

## IN THE INTEREST OF C.M., B.M., AND H.M., CHILDREN

**On Appeal from the 106th District Court**
**Dawson County, Texas**
**Trial Court Cause No. 12-05-18803**

### M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the mother and father of C.M., B.M., and H.M. and named the Department of Family and Protective Services as permanent managing conservator of the children. Both parents appeal. We affirm.

Each parent presents two issues for review. In their issues, the parents assert that the evidence is legally and factually insufficient to support the findings that termination of their parental rights is in the best interest of the children.

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. In this case, the trial court found that the mother and the father committed three of the acts listed in Section 161.001(1). The trial court found that each parent had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, that each parent had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, and that each parent had failed to comply with the provisions of a court order stating the actions necessary for the parent to obtain the return of the children. *See id.* § 161.001(1)(D), (E), (O). The parents do not challenge the findings made pursuant to Section 161.001(1). Any one of these unchallenged findings was sufficient to support termination as long as termination was shown to be in the children's best interest. *See id.* § 161.001. The trial court also found that termination was in the children's best interest. *See id.* § 161.001(2).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record shows that the Department originally received information that the mother and H.M. had tested positive for cocaine in June 2011 when H.M. was born and that the parents had failed to seek medical attention for C.M.'s fractured arm until two weeks after the fracture occurred. Family based safety services (FBSS) were begun at that time, and a service plan was initiated so that removal of the children could be avoided. However, neither parent appeared to take the service plan seriously. They did not complete their services, and both parents continued to use crack cocaine. The Department changed the case from FBSS to conservatorship and removal in May 2012 based upon the parents' drug use, their failure to maintain stable housing and stable employment, and their failure to complete services.

The children were ages five, four, and three years old at the time of termination, and the family had been involved with the Department for three years. The trial court had given the parents extra time to complete their services, but the parents still failed to complete the services as required.

Although the parents had quit using cocaine prior to the date of the final hearing, both parents had a history of drug abuse. Prior to H.M.'s birth and while the other two children were very young, the parents used crack cocaine. The mother admitted that, for a period of time that began when C.M. and B.M. were very young, she used crack cocaine on a daily basis and said that she used "a lot of cocaine" and had an expensive habit. When she was on drugs, the mother had a bad temper. The mother tested positive for cocaine on various dates between June 2011, when the FBSS case began, and April 23, 2012. The father admitted that he "was on crack for about a year," that he "just messed up on drugs for about a year and a half of [his] life," and that he had one relapse after going to rehab, which he did not finish.

In addition to a history of drug abuse while the children were in the care of their parents, there was also evidence indicating that C.M. and B.M. had witnessed inappropriate behavior by the parents. C.M. and B.M. were aware that their parents used drugs. C.M. and B.M. also acted out sexually while in foster care. C.M. was observed French kissing another child in a previous foster home and dancing on a bedpost as if it were a stripper pole. In a subsequent foster home, C.M. again performed seductive dancing and said, "I'm dancing like mommy." C.M. said that she had seen her mother do that with her father. The record shows that the mother had been employed as a stripper at Jaguar's Gold Club "before and during and after" the birth of H.M. While in counseling, C.M. mentioned her parents' drug use, and C.M. and B.M. gave vivid accounts of domestic violence that they had witnessed between the parents. The parents denied that any domestic

4

violence had occurred. B.M. had issues with aggressive behavior while in foster care, and one incident was reported in which B.M. stuck his finger in the anus of another child. B.M said that his father had done that to B.M.

By the time of the last day of trial, the parents had had a fourth child. That child remained with the parents, and the Department approved. The parents wanted their other children returned to them and did not believe that termination of their parental rights would be the in the best interest of the children. However, the Department was concerned that the parents were not capable of handling four children; the parents were not prepared to deal with the behavioral issues of C.M. and B.M. The caseworker, the children's attorney ad litem, the CASA/guardian ad litem, and the foster parent testified that termination would be in the children's best interest.

At the time of the termination, the children had been placed together in a foster home for several months. The testimony indicated that all three children were doing well and had improved tremendously while in that home. The care provided in that home appears to have been impeccable. The foster parent expressed a desire to adopt the children, and the Department's goal for the children was for the children to remain in the home of the foster parent and his partner and for the foster parent to adopt the children. Evidence showed that the foster parent and his partner had the skills and finances to take care of the children, that they took advantage of the services and programs offered by the Department, that they offered stability and a structured and nurturing environment for the children, that they had a stable home, and that the children felt safe there.

While the Department's stated goal for the children is adoption by the foster parent, the trial court's order that is the subject of this appeal does not provide for his adoption of the children. Accordingly, we express no opinion on the potential adoption of the children by the foster parent because that issue is not before us.

H.M. never lived with his parents and had no bond with them. All three children had bonded with the foster parent. Both C.M. and B.M. expressed a desire to stay there, although C.M. enjoyed the visits with her biological parents, especially when they brought toys. When the caseworker went to visit the children at their current foster home, C.M. said, "I love it here and this is where I want to stay." C.M. also pleaded with the caseworker not to take her or "make [her] go back."

Based upon the evidence in the record and the *Holley* factors, we cannot hold that the trial court's best interest findings are not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or conviction that it would be in the best interest of the children for the mother's and the father's parental rights to be terminated. The evidence is both legally and factually sufficient to support the best interest findings. We overrule the mother's and the father's first and second issues.

We affirm the trial court's order of termination.

JIM R. WRIGHT
CHIEF JUSTICE

January 15, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.